UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSEPH WHITING, D-20,

    Defendant.

_____/

Case No. 06-cr-20465

Honorable Nancy G. Edmunds

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR COMPASSIONATE RELEASE [3043]**

Before the Court is Defendant Joseph Whiting's motion to reduce his sentence to time served, filed under the authority of the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. (ECF No. 3043.) The Government opposes the motion. (ECF No. 3049.) The Court has reviewed the record in its entirety and finds that a hearing is not necessary. For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion for compassionate release.

**I.    Background**

Defendant Joseph Whiting is the former National President of the Highwaymen Motorcycle Club ("HMC"), a multi-state outlaw motorcycle gang with its national headquarters in Detroit, Michigan. In its prime, HMC included approximately ten chapters, each with its own officers and internal leadership structure that operated within the hierarchy of the organization as a whole. *United States v. Nagi*, 541 F. App'x 556, 563 (6th Cir. 2013), cert. granted, judgment vacated, 572 U.S. 1111 (2014). On December 15,

1

2009, Defendant was charged in a superseding indictment along with 90 other members of HMC. (*See* ECF No. 997.) The defendants were each accused of one or more crimes including violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), RICO conspiracy, conspiracy to transport stolen property, conspiracy to distribute drugs, and conspiracy to murder, among other things. Some defendants went to trial and some pleaded guilty. Sentences for those that were found guilty ranged from probation, on the low end, to decades in prison for those highest on the culpability list.

On April 1, 2010, trial commenced against Defendant. After weeks of testimony, the jury found Defendant guilty of four counts: racketeering, conspiracy to commit racketeering, conspiracy to commit murder in aid of racketeering, and possession of stolen vehicles. (ECF No. 1854, 2760.) He was sentenced to a cumulative term of 420 months (35 years) imprisonment and began serving that term on March 14, 2011. More than a decade later, Defendant, now 67 years old, remains incarcerated. His projected release date is June 4, 2039.

Six other leaders of HMC were also tried alongside Defendant. Relevant here are defendants Leonard "Dad" Moore, Aref Nagi, and Gary Ball, Jr. Moore was the "godfather" of HMC, and he occupied the top leadership position of the organization. As the Sixth Circuit recognized, there was ample evidence at trial which demonstrated that Moore was "likely the most powerful member of the organization" and that "all significant club activities had to go through him." *Nagi*, 541 F. App'x at 573-74. Despite this evidence, the jury acquitted Moore on the substantive RICO charge and found him guilty on a single count of RICO conspiracy. At sentencing, this Court considered the multitude of evidence presented at trial and held Moore responsible for many of the acts underlying the

2

conspiracy. He was sentenced to life imprisonment consistent with the guidelines calculation at the time. But Moore appealed to the Sixth Circuit which found that because the jury did not find Moore guilty on the substantive RICO charge, or make any special findings as to Moore's participation in the acts underlying the conspiracy, the guidelines only allowed for a maximum term of 20 years. *See id.* at 576 ("The statutory maximum for a violation for the RICO statute is twenty years, unless the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment. . . . [w]hile Racketeering Acts 1, 2, 4, 6, 9, 11, and 13 are all violations for which the maximum penalty includes life, the jury never made any special findings as to Moore's participation with these acts"). Moore was therefore re-sentenced to 20 years imprisonment after the case was remanded to this Court.

Another co-defendant in this trial group, Aref Nagi, was also found guilty by the jury. Like Defendant, Nagi was convicted of a substantive RICO violation and RICO conspiracy. Additionally, Nagi was convicted of conspiracy to transport stolen property in interstate commerce, conspiracy to alter vehicle identification numbers, conspiracy to possess and distribute drugs, assault with a dangerous weapon in aid of racketeering and using a firearm during and in relation to a crime of violence. Based on these seven convictions, this Court sentenced Nagi to a total term of imprisonment of 37 years — two years longer than Defendant's 35 year term. But, Nagi appealed his firearm conviction all the way to the Supreme Court and on May 19, 2014, the Supreme Court vacated Nagi's judgment in light of the recently decided *Rosemond v. United States*, 572 U.S. 65 (2014).[1]

---

[1] In *Rosemond v. United States*, the Supreme Court held the government must prove "advance knowledge that a confederate would use or carry a gun" and that jury instructions must include that the "defendant knew in advance that one of his cohorts would be armed" in order to prove a violation of 18 U.S.C. § 924(c), use of a firearm during and in relation to a crime of violence. 572 U.S. 65 (2014).

3

*See Aref Nagi v. United States*, 572 U.S. 1111 (2014). Even though *Rosemond* only applied to Nagi's firearm conviction, the case was remanded to this Court under a general remand which allowed the Court to re-sentence Nagi on all the counts upon which he was convicted. (*See* ECF 2766.) The Court took into consideration updated information regarding Nagi's exemplary conduct in prison and re-sentenced Nagi to a cumulative 20-year term of imprisonment, shaving 17 years off his prior sentence. Nagi is now set to be released a full 15 years prior to Defendant even though he was convicted of more crimes and originally sentenced to a longer term.

The last member of Defendant's trial group that is relevant here is Gary Ball, Jr. Ball was the Eight Mile Chapter Vice President of HMC. He was found guilty on six counts (a substantive RICO violation, RICO conspiracy, conspiracy to transport stolen property in interstate commerce, conspiracy to alter vehicle identification numbers, and two counts of conspiracy to possess and distribute drugs) and sentenced to thirty years imprisonment.

Then came COVID-19, the once-in-a-lifetime pandemic that caused countless numbers of people to become sick and millions of deaths. *See World Health Organization*, WHO Coronavirus (COVID-19) Dashboard, https://covid19.who.int (last visited 8/5/2021) (identifying, to date, 200,174,883 confirmed cases of COVID-19 and 4,255,892 deaths). As a result of the pandemic and the recently amended 18 U.S.C. § 3582(c)(1)(A),[2] motions from incarcerated individuals requesting "compassionate release" started pouring into federal courts. One of those motions was Moore's. He requested compassionate release on July 22, 2020 due to his advanced age (73 years), medical

---

[2] As discussed in more detail below, Section 603(b) of the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow incarcerated persons to file motions for compassionate release on their own behalf.

conditions, and an increased risk of severe infection from COVID-19. This Court found the reasons Moore provided were "extraordinary and compelling" as required by the statute and reduced his sentence to time served. (*See* ECF 3032.) He was released from prison on November 5, 2020 after having served approximately ten years.

The Court also granted relief to Ball under the authority of § 3582(c)(1)(A)(i) although Ball was not immediately released from prison. Rather, Ball's sentence was reduced from a cumulative term of 30 years to a 20-year term. In doing so, the Court recognized Ball's advancing age (55), medical concerns (including high blood pressure and pre-diabetes) and previous bout with COVID-19 that caused him to suffer severe and lingering symptoms. Additionally, the Court acknowledged the disparity between Ball's 30-year sentence and Nagi's amended 20-year sentence for nearly identical convictions. The Court held that these reasons, when taken together, constituted extraordinary and compelling circumstances to reduce Ball's sentence. *United States v. Ball*, Case No. 06-cr-20465, 2021 WL 2351088, at *4 (E.D. Mich. June 9, 2021).

Like Moore and Ball, Defendant now moves this Court for compassionate release. As the basis for his motion, Defendant complains of chronic obstructive pulmonary disease (COPD), osteoarthrosis, prostate problems, chronic Hepatitis C, and skin cancer in combination with the increased threat of infection from COVID-19 in the congregate confinement of a prison setting. In response, the Government states that Defendant has already had COVID-19 and recovered so he has shown his body can overcome the virus despite his underlying health conditions. Additionally, the Government argues that Defendant is a danger to the community and that the relevant sentencing factors weigh against his early release despite any risk associated with the pandemic. Presently, the

5

Bureau of Prisons reports 2 active cases of COVID-19 at FCI Memphis (both staff members), 383 recoveries (both inmates and staff), and 2 deaths (inmates) at that facility. *See COVID-19 Cases*, Federal Bureau of Prisons (last updated August 5, 2021), https://www.bop.gov/coronavirus/.

Defendant requested compassionate release from the warden of FCI Memphis citing his medical conditions and the COVID-19 pandemic and his request was denied on April 23, 2020.

## II.   Analysis

Under 18 U.S.C. § 3582(c)(1)(A), district courts may modify a term of imprisonment for "extraordinary and compelling reasons." *See United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020). While frequently thought of as requiring immediate release, the statute allows a district court to "reduce but not eliminate a defendant's prison sentence[.]" *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020); *see also*, *United States v. McDonel*, --- F. Supp. 3d ----, No. 37-20189, 2021 WL 120935, at *6 (E.D. Mich. Jan. 13, 2021) (reducing 1,285-month sentence to 240 months). Nevertheless, such motions are generally referred to as those for "compassionate release." *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *8 n.2 (D. Utah Feb. 18, 2020) ("In this order, the court uses the phrase 'compassionate release' and 'sentence modification' interchangeably, which is consistent with how other courts have used the terms.")

Inmates were not always able to bring compassionate release motions on their own behalf. Historically, only the BOP's Director could bring such a motion, but the BOP rarely exercised this power. "A 2013 report from the Office of the Inspector General revealed that, on average, only 24 incarcerated people per year were released on BOP

6

motion." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quoting *Brooker*, 976 F.3d at 231). Moreover, "the program was plagued by mismanagement" and inconsistency. *Id.* at 518-19. Recognizing this problem, Congress sought to expand compassionate release by passing the First Step Act in December 2018. Section 603(b) of the First Step Act—titled "[i]ncreasing the use and transparency of compassionate release"—removed the BOP from this gatekeeper role and amended § 3582(c)(1)(A) to permit inmates to file motions for compassionate release in the district court. *Jones*, 980 F.3d at 1104-05 (citing First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239).

Before requesting a reduction, the Sixth Circuit requires a defendant to exhaust his administrative remedies or wait thirty days from the warden's receipt of a request for release from the defendant—whichever is earlier. *Jones*, 980 F.3d at 1105. Once this preliminary step has been satisfied, the Court may grant a defendant's motion if three requirements are met: First, "the court initially must 'find[ ]' that 'extraordinary and compelling reasons warrant such a reduction[.]' " *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Second, "the court next must 'find[ ]' 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]' " *Id.* at 1005 (quoting 18 U.S.C. § 3582(c)(1)(A)).[3] Finally, "the court may not grant the reduction before 'considering the factors set forth in section 3553(a) to the extent that they are applicable[.]' " *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

### A. Exhaustion of Administrative Remedies

The government concedes that Defendant properly exhausted his administrative remedies by submitting a request for release to the warden at FCI Memphis and waiting

---

[3] The policy statement referenced in step two is found in U.S.S.G. § 1B1.13 and presently only applies to motions brought by the Bureau of Prisons, not to inmate-filed motions. *Elias*, 984 F.3d at 519.

7

until that request was denied before filing the present motion. (ECF No. 3043-2.) This threshold requirement to relief has therefore been satisfied.

### B. Extraordinary and Compelling Reasons

Eighteen U.S.C. § 3582 requires, but does not define, "extraordinary and compelling reasons[.]" District courts have therefore been given "full discretion" to define what constitutes "extraordinary and compelling" on a case-by-case basis. *Jones*, 980 F.3d at 1111; see also *Brooker*, 976 F.3d at 237 (noting that "a district court's discretion in this area – as in all sentencing matters – is broad"). In the context of the COVID-19 pandemic, many courts have found these reasons where a defendant suffers from a medical condition that makes him more susceptible to severe illness from COVID-19. *See, e.g., United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *1 (E.D. Tenn. Apr. 15, 2020) (granting compassionate release to an inmate diagnosed with COPD and who required oxygen therapy); *United States v. Allsbrook*, No. 1:17-CR-74-4, 2020 WL 7202577, at *1 (S.D. Ohio Dec. 7, 2020) (granting compassionate release to a defendant who suffered from sleep apnea and asthma); *United States v. Meeks*, No. 10-CR-20388-2, 2021 WL 869669, at *1 (E.D. Mich. Mar. 9, 2021) (finding extraordinary and compelling reasons for compassionate release where defendant was obese and had been diagnosed with high blood pressure).

Numerous courts have also found extraordinary and compelling reasons where legislative changes drastically reduced mandatory sentencing requirements. *See, e.g., United States v. Young*, 458 F. Supp. 3d 838 (M.D. Tenn. 2020); *United States v. Baker*, No. 20513, 2020 WL 4696594, at *3 (E.D. Mich. Aug. 13, 2020); *United States v. Marks*, 455 F. Supp. 3d 17 (W.D.N.Y. 2020); *United States v. Taniguchi*, No. 00-50, 2020 WL

6390061, at *3-5 (S.D. Ohio Nov. 2, 2020). Some courts (mostly pre-pandemic) have also found extraordinary and compelling reasons to grant compassionate release based upon combinations of other factors including the defendant's history, mismanagement of the defendant's medical care, the health of defendant's family members, and job opportunities. *See, e.g., United States v. Walker*, No. 1:11 CR 270, 2019 WL 5268752, at *3 (N.D. Ohio Oct. 17, 2019) (granting compassionate release to a veteran who had served a significant portion of his sentence and who had an opportunity to produce a movie based upon a book he authored); *United States v. Beck*, 425 F. Supp. 3d 573 (M.D. N.C. 2019) (granting compassionate release to a defendant whose breast cancer spread after the BOP grossly mismanaged her medical care); *United States v. Bucci*, 409 F. Supp. 3d 1 (D. Mass. 2019) (granting compassionate release to a defendant who was the only potential caregiver for his ailing mother). And this Court has twice found that a sentence disparity created after sentencing through no fault of the defendant to be an extraordinary and compelling reason warranting compassionate release. *United States v. Ferguson*, --- F. Supp. 3d ----, 2021 WL 1685944, at *3, (E.D. Mich. April 29, 2021); *United States v. Ball*, No. 06-cr-20465, 2021 WL 2351088, at *5 (E.D. Mich. June 9, 2021).

Essentially, courts have used their discretion and their intimate knowledge of individual defendants' cases to further the purpose of the compassionate release statute — to reduce terms of incarceration based upon a consideration of a defendant's unique circumstances. *See Jones*, 980 F.3d at 1104-05 (discussing how "a bipartisan coalition in Congress sought to boost grants of compassionate release by reforming § 3582(c)(1)(A)'s procedures").

Here, Defendant claims he suffers from a myriad of health concerns that he argues raise his risk of severe illness from COVID-19 and therefore amount to extraordinary and compelling reasons that warrant a sentence reduction. The government concedes that Defendant's circumstances qualify as "extraordinary" because Defendant's medical records establish that he has COPD which has been confirmed by the CDC as a risk factor that places a person at increased risk of severe illness from COVID-19. *See People with Certain Medical Conditions,* Centers for Disease Control and Prevention (last updated May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html; *see also Elias*, 984 F.3d at 521 ("Relying on official guidelines from the CDC is a common practice in assessing compassionate-release motions.").

Nevertheless, the government argues Defendant's circumstances are not "compelling" given the crimes with which Defendant was convicted, his leadership role in HMC, and the fact that Defendant has already contracted and recovered from COVID-19. The Court disagrees. As an initial matter, consideration of the crimes with which Defendant was convicted and his role in the motorcycle club is best done through an analysis of the 18 U.S.C. § 3553(a) factors, as below. Additionally, the fact that Defendant has recovered from COVID-19 does not make his medical concerns less extraordinary or compel the Court to deny the motion. As the government correctly points out, "[t]he immune response, including duration of immunity, to SARS-CoV-2 infection is not yet understood. Based on what we know from other viruses, including common human coronaviruses, some reinfections are expected." (ECF No. 3049 quoting *COVID-19 FAQ "Can people who recover from COVID-19 be re-infected with SARS-CoV-2?"*, Centers for

Disease Control and Prevention (last updated March 4, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html). The Court thus finds that Defendant's health concerns in the face of the ongoing COVID-19 pandemic constitute extraordinary and compelling reasons for relief under § 3582(c).

Additionally, just as in *Ferguson* and *Ball*, the Court finds the sentence disparity between Defendant's sentence and the sentences of other HMC leaders that were part of Defendant's trial group to be an extraordinary and compelling reason to reduce Defendant's sentence. *See United States v. Ferguson*, --- F. Supp. 3d ----, 2021 WL 1685944, at *3, (E.D. Mich. April 29, 2021); *United States v. Ball*, No. 06-cr-20465, 2021 WL 2351088, at *5 (E.D. Mich. June 9, 2021). Of the five other defendants in Defendant's trial group, three have been granted reduced sentences either under the authority of § 3582 or on remand after a successful appeal. As discussed above, Moore, the "godfather of HMC" who was originally sentenced to life imprisonment, had his sentence reduced to a 20-year term then was released after having served less than ten years. Like Defendant, he had COPD and other health concerns that raised his risk of severe illness or death from COVID-19. Similarly, Ball had his original 30-year sentence reduced to 20-years after the Court found extraordinary and compelling reasons to grant his request for a reduction. And Aref Nagi, originally sentenced to 37 years, had 17 years taken off his sentence when the Court was able to reconsider the § 3553(a) factors on a general remand. Now, of these individuals, only Defendant remains incarcerated with over a decade of time left to serve.[4] The Court therefore proceeds to the analysis of the § 3553(a) factors to determine if a reduction is appropriate.

---

[4] The remaining two defendants from this trial group, Michael Cicchetti and Anthony Clark, have either been released from prison or are deceased.

### C. Sentencing Factors

Although Defendant has made a satisfactory showing of extraordinary and compelling reasons that warrant a sentence modification, the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, protection of the public, and the need to avoid unwarranted sentence disparities. *See* 3553(a).

Defendant's crimes were serious. He held a leadership position in an extensive criminal enterprise that involved massive amounts of drugs and an interstate theft operation, among other things. Moreover, Defendant has a significant amount of time (about 18 years) remaining on his sentence. According to the government, Defendant has not provided reasons sufficient to reduce Defendant's sentence by this "incredibly sizable" length of time. In other words, the "magnitude of [Defendant's] requested sentence reduction" is too great to be granted under the present circumstances. *See* 18 U.S.C. § 3582(c)(1)(A)(i) (requiring a defendant to show reasons for release that "warrant such a reduction" in his sentence.)

The Court agrees with this portion of the government's argument but declines to stop its analysis there. As discussed above, § 3582 grants authority to a district court to reduce a defendant's prison sentence even if the court declines to eliminate the remainder of that prison sentence completely. *See Brooker*, 976 F.3d at 237. And in this case, the Court finds it appropriate to reduce Defendant's 35 year sentence by fifteen years. This reduction remedies any disparity in sentencing created by granting compassionate

release to Moore or a reduction in sentence to Nagi or Ball. It also reflects the seriousness of Defendant's offenses, provides just punishment, and hopefully, serves as a deterrent to others considering similar crimes.

This reduction is also consistent with the balance of the remaining § 3553(a) factors, most notably Defendant's recent history and characteristics. Since Defendant has been incarcerated, he has made compelling efforts at rehabilitation. He has consistently worked toward his associate degree at a local community college and has completed nearly 50 educational programs. (*See* ECF No. 3043-7.) His progress report shows he has completed courses in mentoring, job skills, substance abuse, financial literacy, healthy living, and release preparation, among other things. (*Id.*) He has paid his financial obligation to the court and he works in the prison's safety office which helps educate prisoners on the facility's regulations. (*Id.*) Additionally, Defendant has no recent disciplinary history and only two misconducts during his time in custody. (*See* ECF No. 3043-8.) Notably, the most serious misconduct (refusing a drug test) occurred over ten years ago when Defendant was still in pretrial detention. (*Id.*) And the second misconduct, refusing to stand for a count after falling asleep in a chair, does not concern the Court given Defendant's otherwise clean disciplinary record. (*Id.*)

**III.    Conclusion**

The Court has considered each party's arguments in depth and finds that a modification of Defendant's sentence is warranted. For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's motion for a sentence reduction under § 3582(c)(1)(A) is GRANTED IN PART AND DENIED IN PART. Defendant's motion is

GRANTED in that the custodial portion of Defendant's sentence is reduced to a 20-year term of incarceration. Defendant's request for immediate release is DENIED.

Defendant's original sentence remains unchanged in all other respects.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: August 10, 2021


I hereby certify that a copy of the foregoing document was served upon counsel of record on August 10, 2021, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager
